UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ZEN-NOH AMERICA HOLDINGS CORP.

VERSUS

CERTAIN UNDERWRITERS AT
LLOYD'S OF LONDON

CIVIL ACTION

NO: 25-1633

SECTION: "J"(2)

## ORDER AND REASONS

Before the Court is a *Motion to Stay* **(Rec. Doc. 29)** filed by Defendant Certain Underwriters at Lloyd's of London ("Underwriters"). Plaintiff Zen-Noh America Holdings Corp. ("ZAH") has filed an opposition. (Rec. Doc. 33). Underwriters has filed its reply. (Rec. Doc. 34). Having considered the motion, the memoranda, the record, and the applicable law, the Court finds that Underwriters' motion should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

The Court detailed the facts of this case in a prior Order and Reasons that denied ZAH's motion for summary judgment. The Court found that there were genuine issues of material fact regarding whether Abdul Jallal Mallah ultimately owned the M/V Brilliance (the "Vessel") that transported the lost cargo and whether OFAC FAQ 1200 applies to this case. Underwriters now asks this Court to stay this matter so that the Office of Foreign Assets Control ("OFAC") may determine whether ZAH violated U.S. sanctions laws by transporting the cargo on the Vessel, and, if so, whether it will issue ZAH a specific license so that Underwriters may pay the claim.

1

## LEGAL STANDARD

A district court has "discretionary power to stay proceedings before it in the control of its docket and in the interests of justice." *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982). In determining whether a stay should be granted the Court considers "(1) any hardship imposed on the moving party by proceeding with the action, (2) any prejudice to the non-moving party if the stay is granted, and (3) the interests of judicial economy." *Falcone v. Anco Insulations, Inc.*, No. 21-233, 2021 WL 3679616 at *4 (E.D. La. July 20, 2021) (Brown, J.) (quoting *Cortez v. Lamorak Ins. Co.*, No. 20-2389, 2021 WL 2018073 at *4 (E.D. La. May 20, 2021) (Vance, J.)) (internal quotations omitted).

## DISCUSSION

Underwriters argues that this Court should stay this matter pursuant to the primary jurisdiction doctrine to allow OFAC to determine whether the underlying transaction was prohibited, and, if so, whether it will issue ZAH a specific license so that Underwriters may pay ZAH for its loss. Underwriters claim that OFAC's determination will aid the parties in resolving this matter and that a stay is therefore appropriate.

ZAH argues that the motion to stay should be denied for four main reasons (1) the primary jurisdiction doctrine does not apply (2) the issues before the Court are not proper subjects for agency deferral (3) Underwriters focus on the wrong transaction and (4) the Court lacks the authority to stay this proceeding.

Under the primary jurisdiction doctrine, "a court which has jurisdiction over a matter, nonetheless defers to an administrative agency for an initial decision on questions of facts or law within the peculiar competence of the agency." *REO Indus., Inc. v. Nat. Gas Pipeline Co. of Am.*, 932 F.2d 447, 456 (5th Cir. 1991) (emphasis omitted). As the Fifth Circuit has explained, three factors must be satisfied for the primary jurisdiction doctrine to apply: "(1) the court has original jurisdiction over the claim[s] before it; (2) the adjudication of [those] claim[s] requires the resolution of predicate issues or the making of preliminary findings; and (3) the legislature has established a regulatory scheme whereby it has committed the resolution of those issues or the making of those findings to an administrative body." *Northwinds Abatement, Inc. v. Emp. Ins. of Wausau*, 69 F.3d 1304, 1311 (5th Cir. 1995) (citing *Penny v. Sw. Bell Tel. Co.*, 906 F.2d 183, 187 (5th Cir. 1990). Still, even if these requirements are satisfied, the Court must balance any benefit of agency assistance with the need to resolve the disputes both fairly and expeditiously. *Occidental Chem. Corp. v. La. Pub. Serv. Com'n*, 810 F.3d 299, 309–10 (5th Cir. 2016). Further, only "fact intensive enforcement" issues should be referred to an agency, but legal, non-factual regulatory issues remain with the court. *Id.* (citing *Colum. Gas Transmission Corp. v. Allied Chem. Corp.*, 652 F.2d 503, 520 n. 15 (5th Cir. 1981).

Underwriters argues that all three requirements are met. First, it notes that neither party disputes that this Court has original jurisdiction over ZAH's claims. Second, it contends that the adjudication of ZAH's claims depends on whether ZAH needs a specific license from OFAC, and, if so, whether OFAC will issue said license.

3

Third, it notes that Congress has given the President the authority to administer and enforce U.S. sanctions and that the President has delegated that authority to the U.S. Secretary of the Treasury, which has redelegated that authority to OFAC.

ZAH does not contend that this Court lacks original jurisdiction over its claims. Nor does it contend that OFAC lacks the authority to enforce and administer U.S. sanctions laws. However, ZAH argues that Mr. Mallah's alleged involvement is an evidentiary issue, not a predicate one. More specifically, ZAH claims that Underwriters lacks sufficient evidence to support that Mr. Mallah owns the Vessel and thus cannot take advantage of the primary jurisdiction doctrine to have OFAC resolve this dispute.

The Court disagrees. The primary jurisdiction doctrine allows Courts to defer to agencies to make factual findings where there is an intricate factual question in the agency's specialized expertise to decide. *See United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64–66 (1956) (explaining that the primary jurisdiction doctrine is appropriate where "the inquiry is essentially one of fact and of discretion in technical matters" because its resolution requires "acquaintance with many intricate facts" that are within the agency's specialized expertise) (internal quotations omitted).

The Court finds such an intricate factual question here, specifically whether Mr. Mallah owns or has an ownership interest in the Vessel, either directly or indirectly. As the Court explained in a prior Order and Reasons, Underwriters present sufficient admissible evidence that creates a genuine and material factual dispute as to whether Mr. Mallah owns the Vessel. Resolution of this dispute will

likely require an analysis of many intricate facts because of how broadly OFAC defines property interest and the opaque nature of Vessel ownership. *See* 31 C.F.R. § 594.306 (defining property interest as "an interest of any nature whatsoever, direct or indirect); *see also*, U.S. Dep't of the Treasury, Off. of Foreign Assets Control, *OFAC Compliance Communique: Sanctions Guidance for the Maritime Shipping Industry* (Oct. 31, 2024) https://ofac.treasury.gov/media/933556/download?inline (explaining that blocked persons may engage in "evasive or illicit behavior . . . to conceal the ultimate beneficial owner of vessels" and vessel ownership may involve "complex ownership and management structures, shell companies, intermediaries, and escrow agents"). Mr. Mallah's ownership of the Vessel is a predicate issue because it determines whether the underlying transaction was prohibited such that ZAH would need to apply for a specific license from OFAC before Underwriters can pay for the cargo loss. This factual issue is well within OFAC's expertise. The Court thus rejects ZAH's evidentiary argument.

Having found that the adjudication of ZAH's claim requires resolution of a factually intensive predicate issue, the Court now turns to whether the resolution of that issue has been committed to OFAC. The Court finds that it has. Congress has authorized the President to levy economic sanctions to address "extraordinary national security, foreign policy, or economic threats through [the International Emergency Economic Powers Act.]" *In re Criminal Complaint,* No. 22-mj-67, 2022 WL 1573361 at *2, (D.D.C. May 13, 2022) (citing 50 U.S.C. § 1701 *et seq*). The President has in turn "delegated this authority to the Secretary of the Treasury, who

5

has in turn delegated it to . . . OFAC, a division of the United States Department of Treasury." *Empresa Cubana Exp. de Alimentos y Prod. Varios v. U.S. Dep't of Treasury*, 606 F. Supp. 2d 59, 63 (D.D.C. 2009), *aff'd*, 638 F.3d 794 (D.C. Cir. 2011) (cleaned up). Consequently, "OFAC administers a number of different sanctions programs." U.S. Dep't of the Treasury, Off. of Foreign Assets Control, *Sanctions Programs and Country Information*, https://home.treasury.gov/policy-issues/financial-sanctions/sanctions-programs-and-country-information (last visited July 27, 2026). As part of administering these programs, OFAC maintains the Specially Designated Nationals ("SDN") List, which includes "blocked persons, blocked vessels" and "specially designated global terrorists . . . whose property and interests in property are blocked pursuant to the various economic sanctions programs administered by OFAC." 31 C.F.R. Ch. V, App. A.

Courts routinely defer to OFAC's maintenance of the SDN List and its definition of property interests. *See Rakhimov v. Gacki*, No. CV 19-2554, 2020 WL 1911561, at \*6 (D.D.C. Apr. 20, 2020) (explaining that the court "may not substitute [its] judgment for [the] Treasury's," and that OFAC need only "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made" when explaining why it added a person to the SDN List) (internal quotations omitted); *see also Consarc Corp. v. Iraqi Ministry*, 27 F.3d 695, 701 (D.C. Cir. 1994) ("We think that OFAC may choose and apply its own definition of property interests, subject to deferential judicial review.") OFAC may also utilize classified information that is not available to the

parties to enforce sanctions. *Rusaviainvest, OOO v. Yellen*, No. CV 18-5676, 2023 WL 6198256, at *6 (S.D.N.Y. Sept. 21, 2023) (finding that OFAC's reliance on classified information to determine that a SDN had a property interest in blocked funds was neither arbitrary nor capricious). The Court thus finds that OFAC has the authority to resolve the predicate issues between the parties.

ZAH next argues that the relevant transaction in this dispute is the sought insurance payment, not the transportation of the cargo on a Vessel allegedly owned by a Specially Designated Global Terrorist. Rehashing much of the same argument made in their motion for partial summary judgment, ZAH argues that OFAC FAQ 1200 applies to this case and permits Underwriters to pay for the cargo loss.

The Court has rejected ZAH's argument in a prior Order and Reasons and will do so again here. Whether Underwriters can pay ZAH for the cargo loss hinges upon whether ZAH engaged in a prohibited transaction when it agreed to transport cargo on the Vessel. ZAH cannot focus on the insurance payment in isolation to circumvent OFAC regulations, which "generally prohibit all transactions by U.S. persons . . . that involve any property or interests in property of blocked persons" absent a license from OFAC. U.S. Dep't of the Treasury, Off. of Foreign Assets Control, *Treasury Sanctions Operatives Generating Revenue for Hizballah and Exploiting Lebanon's Cash Economy*, Press Release (Feb. 10, 2026) home.treasury.gov/news/press-releases/sb0393. The Court has already decided that OFAC FAQ 1200 does not clearly apply to this case, and it will not entertain ZAH's argument to the contrary.

ZAH next argues that OFAC has already determined that Mr. Mallah does not own or have any ownership interest in the Vessel. ZAH notes that OFAC has stated that the Vessel is part of a fleet **managed** by Mr. Mallah but not **owned** by him. (Rec. Doc. 33, at 16) (emphasis in original). ZAH contends that this distinction matters, and it notes that OFAC has on prior occasions identified certain vessels "as property in which Abdul Jalil Mallah has an interest." *Id.* at 17 (citing U.S. Dep't of the Treasury, Office of Foreign Assets Control, *Treasury Sanctions Networks Enabling Illicit Trade that Benefits IRGC-QF and Hizballah*, Press Release (Sept. 25, 2024) home.treasury.gov/news/press-releases/jy2613).

As the Court has explained in a prior Order and Reasons, if Mr. Mallah manages the Vessel, it is reasonable to infer that he has an ownership interest in it. That Mr. Mallah does not hold title to the Vessel **on paper** does not indisputably prove that he lacks any ownership interest in the Vessel, either directly or indirectly. *See e.g. Rusaviainvest,* 2023 WL 6198256, at *6 (finding that the fact that no one involved in the transaction "h[e]ld **title** to the blocked assets . . . **does not** preclude the blocking of such assets under the Global Terrorism Sanctions Regulations"). (emphasis added) (quoting *Doe v. JP Morgan Chase Bank, N.A.*, 899 F.3d 152, 157 n.4 (2d Cir. 2018). Accordingly, the Court also rejects ZAH's nuanced argument here.

ZAH next contends that a stay of this matter and deferral to OFAC would violate its procedural due process rights. ZAH argues that it has a property interest in its claim for recovery under the insurance policy, and that Underwriters fails to articulate the exact process that ZAH would go through to apply for the license. ZAH

8

also argues that Underwriters fails to explain whether OFAC must respond to ZAH's license application within a specific timeline, or if it must respond at all.

Procedural due process "imposes constraints on governmental decisions that deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976). To state a valid procedural due process claim, a plaintiff must allege (1) the deprivation of a protected property or liberty interest, and (2) that the deprivation occurred without due process of law. *See Grimes v. Pearl River Valley Water Supply Dist.,* 930 F.2d 441, 444 (5th Cir.1991).

The Court finds that ZAH has a property interest in its insurance claim, but it finds that deferral to OFAC would not be constitutionally deficient. OFAC regulations clearly outline the process by which a person may apply for a general or specific license. *See* 31 C.F.R. § 501.801. OFAC's determination as to whether it will issue a license constitutes a final agency action. *Id.* § 501.802. This Court may compel an OFAC decision that is "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). And it may "hold unlawful and set aside" OFAC's decision if it is, *inter alia,* "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* § 706(2).

ZAH thus has an available procedure to apply for a license. If OFAC unreasonably delays its decision, ZAH may challenge that delay, and this Court may compel OFAC action. If OFAC issues a decision that ZAH disagrees with, it may challenge that decision in this Court. The Court therefore finds that deferral to OFAC

for a determination on this predicate issue will not violate ZAH's procedural due process rights.

Finally, ZAH contends that this Court lacks authority to stay this matter because the factors provided by the Supreme Court in *Landis v. N. Am. Co.* 299 U.S. 248 (1936) weigh against a stay of this proceeding. First, ZAH argues that Underwriters has not shown that proceeding with this action will impose hardship. Second, ZAH claims that it would be prejudiced by a stay. Third, ZAH contends that judicial economy favors proceeding.

Underwriters argues that the benefits of a stay outweigh the need to expeditiously resolve this litigation. Underwriters also claim that the Fifth Circuit has found on numerous occasions that a stay is appropriate when an agency can provide much needed guidance on the predicate issues in a case.

The Court agrees with Underwriters. First, Underwriters has shown that proceeding with this action will impose significant hardship. If Mr. Mallah owns the Vessel, then paying ZAH without a license likely violates U.S. sanctions laws. A Court order to pay ZAH thus places Underwriters in an impossible situation absent a determination from OFAC. Second, while the Court recognizes that ZAH will be prejudiced by a stay, it sees no way to propel this case forward without OFAC's assistance. Third, judicial economy favors a stay, as OFAC is in a much better position than this Court to efficiently and correctly determine Mr. Mallah's connection with the Vessel. These judicial-economic benefits exist even if ZAH appeals OFAC's decision to this Court. *See Henry v. Indep. Am. Sav. Ass'n.*, 857 F.2d

995, 1003 (5th Cir. 1988) (Higginbotham J. concurring) (explaining that even when a party ultimately appeals an agency's determination "the administrative process can reduce litigation costs and delays" because "[t]he need for additional discovery will often be obviated, and the disputed issues may well be narrowed by the time a court gets involved").

The Fifth Circuit often supports staying a proceeding pending guidance from an administrative agency on a predicate issue. *See, e.g., Penny*, 906 F.2d at 189 (remanding case to the district court to stay the matter until an administrative agency "has had a reasonable time to make a determination on" the predicate issue between the parties); *Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 206 (5th Cir. 1988) (staying a matter for 180 days to allow an administrative agency to rule on a plaintiff's complaint); *Miss. Power & Light Co. v. United Gas Pipeline Co.*, 532 F.2d 412, 414 (5th Cir. 1976) (affirming the district court's decision to stay all proceedings "to await the response" of an administrative agency "as to its primary jurisdiction of this curtailment question.") (citation and internal quotations omitted).

As the Supreme Court has stated "in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." *Far E. Conf. v. United States*, 342 U.S. 570, 574 (1952). The Court will not pass over OFAC's expertise. The Court finds that the *Landis* factors weigh in favor of a stay and that the benefits of OFAC's assistance outweigh the cost of delaying this litigation. A stay in this matter is therefore warranted.

11

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Underwriters' *Motion to Stay* **(Rec. Doc. 29)** is **GRANTED** as follows. The Court shall stay this matter for 180 days to allow ZAH to apply for a license and for OFAC to determine whether ZAH needs a license for the underlying transaction and, if so, whether it will issue said license. Every 90 days, ZAH shall provide updates to this Court concerning its license application status. If OFAC fails to act within that 180-day period, then this Court may extend the deadline if (1) either party shows good cause, and (2) the delay would not irreparably harm ZAH's rights.

**IT IS FURTHER ORDERED** that this matter is **ADMINISTRATIVELY CLOSED**. If any issues remain after a final decision by OFAC, any party may file a written motion for leave to reopen this matter.

New Orleans, Louisiana, this 29th day of July, 2026.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

12